UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| HARRY E. B., JR., | ) |
|             Plaintiff | ) |
| v. | )   No. 2:21-cv-00118-LEW |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[1] | ) |
|             Defendant | ) |

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability (SSD) and Supplemental Security Income (SSI) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing work existing in significant numbers in the national economy.  The plaintiff seeks remand on the bases that (i) the ALJ erroneously failed to grant his request for a consultative examination or even explain the denial of that request, and (ii) the appointment of Andrew Saul as the commissioner of Social Security violated the Separation of Powers clause of Article II of the U.S. Constitution, warranting remand for a new hearing in this case.  *See* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 15) at 6-15.  I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted his administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement.  Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Hum. Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2021, Finding 1, Record at 24; that he had the severe impairments of degenerative joint disease of the bilateral hips and obesity, Finding 3, *id*. at 25; that he had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), except that he could stand and walk for no more than four hours in an eight-hour workday, would require the use of a cane for ambulation and balance, could occasionally balance, stoop, kneel, crouch, crawl, climb ramps/stairs, or climb ladders/ropes/scaffolds, and needed to avoid all hazards including unprotected heights, dangerous machinery, and excessive vibration, Finding 5, *id*. at 26; that, considering his age (43 years old, defined as a younger individual, on his alleged disability onset date, November 15, 2016), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 29-30; and that he, therefore, had not been disabled from November 15, 2016, his alleged onset date of disability, through the date of the decision, November 19, 2020, Finding 11, *id*. at 31. The Appeals Council declined to review the decision, *id*. at 7-9, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Hum. Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Hum. Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the

conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Hum. Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than any past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Hum. Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Challenge to ALJ's Decision

#### 1. Background

After "a long standing history of left hip pain that ha[d] failed conservative treatment[,]" Record at 752, the plaintiff underwent a total left hip arthroplasty on October 8, 2019, *see id*. at 757. He alleged that he was disabled by left hip problems (a bone disorder of the left hip), as well as high blood pressure, high cholesterol, and mental health problems (a mental breakdown). *See id*. at 85, 91, 99, 106.

On initial review of the plaintiff's disability application on December 10, 2019, Donald Trumbull, M.D., found that he had severe impairments of osteoarthritis and obesity, *see id*. at 87, 93, noting that he was "S/p Lt. THR" – status-post a left total hip replacement, *id*. at 89. 95. He assessed a physical RFC for the period from July 10, 2019, through July 9, 2020, that anticipated improvement by the latter date, *see id*. at 88, 94, finding the plaintiff able to occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday, and sit (with normal breaks) for a total of more than six hours on a sustained basis in an eight-hour workday, *see id*. at 88-89, 94-95. He

explained, "[s]evere now but very good recovery results[,]" noting, "[r]easonable to anticipate this RFC by 12mos w/ clmnt's full attention to TS [treating source] advice, rehab an[d] weight loss to facilitate healing and [r]econditioning efforts." *Id*. at 89, 95.

On reconsideration on May 12, 2020, Jennifer Marshall, M.D., assessed a physical RFC for the period from July 10, 2019, through the date of her review, noting, "At this time the [plaintiff] is still having some functional difficulties which [s]hould continue to improve with PT [physical therapy] and time." *Id*. at 102-04, 109-11. She deemed the plaintiff capable of lifting and/or carrying 10 pounds, standing and/or walking (with normal breaks) for a total of four hours, with a "medically required hand-held assistive device . . . necessary for ambulation[,]" and sitting (with normal breaks) for a total of about six hours in an eight-hour workday. *Id*. at 103. 110. She also assessed postural limitations (occasionally climbing ramps/stairs, stooping, kneeling, crouching, or crawling; never climbing ladders, ropes, or scaffolds; frequently balancing) and environmental limitations (avoiding concentrated exposure to wetness, vibration, and hazards; avoiding wet and uneven surfaces, unprotected heights, and vibratory tools to the left lower extremity). *See id*. at 103-04, 110-11. She explained:

> Claimant is s/p a left THA [total hip arthroplasty] on 10/8/19. Three weeks post operative he was walking with a cane, mildly antalgic. At most recen[t] PT appointment his condition was noted to be "improving left hip ROM [range of motion]/flexibility with continued decreased IR [internal rotation] ROM. Signific[ant] weakness remains with left hip abduction at 3/-5 causing possible tendonitis/bursitis with increased lateral hip pain". Claim[ant] is still using a SPC [single-point cane] and has an antalgic gait.

*Id*. at 103, 110. She added, "I did consider the projected RFC from the original case[,]" but the plaintiff "has not medically progressed as . . . [p]rojected." *Id*. at 104. 111.

In a pre-hearing letter to the ALJ dated November 2, 2020, the plaintiff's counsel noted that it did "not appear that [Drs. Trumbull or Marshall] reviewed any treatment records for [the plaintiff] dated after October 2019 before issuing the reconsideration determination in May of

2020." *Id*. at 345-46 (citations omitted). He stated that "treating orthopedic surgeon Dr. Michael Newman and treating provider Kelly Johnson, FNP" had not been willing to complete an opinion statement and that "updated records . . . indicate that [the plaintiff] remains more limited than found by [Drs. Trumbull and Marshall] despite several months of physical therapy following his hip replacement surgery . . . from November of 2019 through June of 2020, at which point [the plaintiff's] physical therapist indicated that although he was still reporting difficulty with many activities and making limited progress due to decreased strength and pain, his services were being discontinued because he had '[m]axed out [his] insurance benefits.'" *Id*. at 346.³ He added:

> In May of 2020 [the plaintiff] returned to Dr. Newman, reporting continued pain in his left hip and increased pain in his right hip. Dr. Newman ordered an injection for [the plaintiff's] right hip pain and indicated that an updated MRI might also be needed. At an appointment with FNP Johnson primarily concerning treatment for dysuria in June of 2020, [the plaintiff] indicated that he was "discouraged" because the cortisone injection he had received to his hip earlier in the month had not really improved his pain symptoms. In September 2020, Dr. Newman reviewed the MRI of [the plaintiff's] left hip and assessed "[f]luid collection around the inguinal canal in the groin" and "[p]ain after left total hip arthroplasty", resulting in a referral to "the general surgeons for a consultation and possible hernia repair or fluid aspiration." Treatment records from October of 2020 indicate that [the plaintiff] continues to require a cane for ambulation "[i]f he has to walk more than 10 feet", consistent with other treatment records indicating an antalgic gait and use of a cane.

*Id*.

The plaintiff's counsel asserted that the opinions of Drs. Trumbull and Marshall were "not consistent with or supported by updated medical evidence of record[,]" requesting that the ALJ schedule a consultative physical examination of the plaintiff following the hearing "to fully develop the record and more accurately assess his present level of functioning if you do not feel

---

³ The commissioner points out, and the plaintiff's counsel acknowledged at oral argument, that the plaintiff's physical therapy sessions ended in March 2020, not June 2020. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 17) at 15 n.7; Record at 1268.

that a fully favorable decision is supported by the evidence of record following the hearing." *Id*. at 346-47.

At the close of the plaintiff's November 9, 2020, hearing before the ALJ, the plaintiff's counsel reiterated his request for a consultative physical examination, again arguing that medical evidence submitted subsequent to the Trumbull and Marshall opinions was not consistent with their expectations. *See id*. at 79-80. The ALJ responded, "just so that we're clear on the issue of consultative examinations, right now, because of the coronavirus pandemic, the Social Security Administration has suspended all in-person physical examinations." *Id*. at 80. The plaintiff's counsel pointed out that, in Maine, his clients had been sent for such examinations in July and October 2020. *See id*. The ALJ responded, "It was the National Guidance Headquarters that said . . . that we're not allowed to do that, at all, until further notice, . . . [b]ut I'll certainly look into it[.]" *Id*. at 80-81. The ALJ added:

> I always appreciate having a consultative exam. If I decide that I need one, I'll certainly keep that in mind and see if it's capable of being done. And otherwise, we'll, you know, make the decision without it. And regardless of the outcome, I like having consultative exams, 'cause they give me kind of that bird's eye opportunity, of sorts. So certainly, I will consider that, if need be.

*Id*. at 81.

The ALJ issued a decision dated November 19, 2020, essentially adopting the RFC opinion of Dr. Marshall. *Compare* Finding 5, *id*. at 26 *with id*. at 103-04, 110-11. He explained, "It is . . . more reasonable given the post-operative records that continue to outline the [plaintiff]'s need for a cane that [he] is unable to function within the guidelines outlined by Dr. Trumbull and his opinion is not persuasive but that the detailed restrictions provided by Dr. Marshall are much more representative of the totality of the record and are found not only persuasive, but used as the starting basis of the established [RFC]." *Id*. at 28. He made no mention of the request for a consultative examination of the plaintiff. *See id*. at 22-31.

## 2. Analysis

The plaintiff seeks remand on the basis that the ALJ "erroneously issued the unfavorable decision under review without addressing or granting [his] request that the ALJ obtain a consultative physical examination for [him] before issuing a decision following the hearing, which rendered his RFC findings unsupported by substantial evidence in the record[.]" Statement of Errors at 1. I find no reversible error.

An ALJ "may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision on [a claimant's] claim." 20 C.F.R. §§ 404.1519a(b), 416.919a(b). Examples include, but are not limited to, instances in which "[t]here is an indication of a change in [the claimant's] condition that is likely to affect [his or her] ability to work" but "the current severity of [his or her] impairment is not established." *Id.* §§ 404.1519a(b)(4), 416.919a(b)(4).

An ALJ "has discretion regarding whether to order a consultative examination[,"] and "[a] failure to order such an examination does not constitute an abuse of discretion unless the examination was necessary to enable the ALJ to determine disability." *Charles T. C. v. Saul*, No. 1:19-cv-00564-NT, 2020 WL 5370551, at *6 (D. Me. Sept. 7, 2020) (rec. dec., *aff'd* Sept. 28, 2020) (citations and internal quotation marks omitted). *See also, e.g.*, *Burnham v. Soc. Sec. Admin. Comm'r*, No. 1:11-cv-00246-GZS, 2012 WL 899544, at *5 (D. Me. Mar. 15, 2012) (rec. dec., *aff'd* Apr. 3, 2012) ("Abuse of discretion [in failing to order a consultative examination] has been said to exist where a referral to an expert is necessary to the disability determination or where the failure to refer unfairly prejudiced the claimant.").

The plaintiff contends that the ALJ erroneously relied on the May 12, 2020, opinion of Dr. Marshall, which was a projection of his anticipated functional abilities, when Dr. Marshall was

7

unaware that his physical therapy treatment was about to be discontinued for lack of insurance coverage and that his "symptoms and limitations had not improved as Dr. Marshall expected[.]" Statement of Errors at 10-11. He adds that "the ALJ erroneously failed to even state any reasons in his written decision for not granting the request to order a consultative physical examination" when "the only *possible* reason stated by the ALJ at the conclusion of the hearing was false": that the commissioner had suspended all in-person physical examinations due to the coronavirus. *Id*. at 11.

He argues that, to the extent the ALJ relied on his activities of daily living as substantial evidence of the found RFC, "the ALJ's decision did not address any of [his] testimony, consistent with the medical evidence of record, indicating that he was limited in his ability to perform those activities to an extent that was inconsistent with the ALJ's RFC findings." *Id*. at 12.

First, I find no prejudicial error in the ALJ's failure to explain his rejection of the plaintiff's request for a consultative examination. While this court has held reversal and remand warranted when "failures to explicate and/or even address material issues prevent a reviewing court from concluding that the ALJ reached a supportable result *via* an acceptable analytical pathway," *Richard S., Jr. v. Kijakazi*, No. 1:20-cv-00244-JDL, 2021 WL 4739493, at *4 (D. Me. Oct. 11, 2021) (rec. dec., *aff'd* Nov. 4, 2021) (citation and internal quotation marks omitted), the ALJ's analytical pathway is discernible in this case.

Rather than relying on the mistaken belief that consultative examinations were not being performed during the pandemic, the ALJ made clear at the conclusion of the plaintiff's hearing that if he decided he needed a consultative examination, he would look into arranging one, and if not, he would make his decision without it. *See* Record at 81. He then explained, in his decision, that he had found "the detailed restrictions provided by Dr. Marshall . . . much more representative

of the totality of the record" than those assessed by Dr. Trumbull and hence "persuasive[,]" *id*. at 28, making reasonably clear that he had deemed a consultative examination unnecessary.

Second, I find no prejudicial error in the ALJ's reliance on the Marshall opinion in crafting the plaintiff's physical RFC. As counsel for the commissioner observes, *see* Opposition at 18, Dr. Marshall took note, from the records available to her, of the key findings to which the plaintiff points in subsequent records: that, as a result of his continued pain and slower-than-expected progress, he required a cane for ambulation and had an antalgic gait. *Compare* Record at 103, 110 *with* Statement of Errors at 8. To the extent that the plaintiff also partially relies on his more detailed testimony at hearing regarding his functional limitations, *see* Statement of Errors at 9-10, he does not separately challenge the ALJ's discounting of that testimony, *see id*. at 6-12.

Remand, accordingly, is unwarranted on the basis of the ALJ's failure either to order a consultative examination or explain his reasons for choosing not to do so.

### B. Constitutional Challenge

The scope of disagreement between the parties concerning whether remand is required on the basis of the plaintiff's constitutional challenge is narrow. The commissioner concedes that 42 U.S.C. § 902(a)(3), the statute limiting the President's authority to remove the Presidentially-appointed, Senate-confirmed commissioner of Social Security without good cause, violates the Separation of Powers clause, *see* Opposition at 2, and the plaintiff concedes that pursuant to *Collins v. Yellin*, 141 S. Ct. 1761 (2021), the availability of a remedy depends on whether that constitutional violation inflicted harm, *see* Plaintiff's Reply Brief ("Reply") (ECF No. 23) at 7; *Collins*, 141 S. Ct. at 1789 (whether petitioners had remedy for Separation of Powers violation depended on whether "the unconstitutional provision . . . inflict[ed] compensable harm"). However, the parties disagree as to the nature of the showing of harm required.

The commissioner notes that Justice Kagan construed the majority's approach to entitle a litigant to relief "only when the President's inability to fire an agency head affected the complained-of decision[,]" noting that she doubted that "the mass of SSA [Social Security Administration] decisions – which would not concern the President at all – would need to be undone." Opposition at 7, 9 (quoting *Collins*, 141 S. Ct. at 1801-02 (Kagan, J., concurring)).

The plaintiff disputes that *Collins* requires a showing of direct prejudice in these circumstances, arguing that "harm is presumed" because "neither the ALJ nor the Appeals Council . . . had a lawful delegation of authority under which to adjudicate and decide this disability claim." Reply at 7. In the alternative, he contends that even if such a showing is required, he surmounts that hurdle with respect to the Appeals Council's denial of his request for review after President Biden assumed office. *See id.* at 9-10; Record at 7 (Appeals Council notice dated March 22, 2021).[4] At oral argument, his counsel cited a passage from *Collins* in which Justice Alito, writing for the majority, stated that the "possibility that the unconstitutional restriction on the President's power to remove a Director of the FHFA [Federal Housing Finance Agency] could [inflict compensable harm] cannot be ruled out[,]" explaining:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Collins*, 141 S. Ct. at 1789.

---

[4] The plaintiff also contends that the commissioner waived any defense with respect to the Appeals Council (*versus* the ALJ) by addressing the Appeals Council only in a footnote. *See* Opposition at 2-14 & n.5; Reply at 3-5. I find no waiver. In his statement of errors, the plaintiff also focused on the ALJ and mentioned the Appeals Council only in passing, indicating (as does the commissioner in his Opposition) that the same analysis applies to both. *See* Statement of Errors at 13-15; Opposition at 8 n.5.

With that as backdrop, the plaintiff argues that contemporaneous evidence demonstrates that "President Biden wished to terminate Commissioner Saul immediately upon assuming the Presidency[,]" citing (i) the White House's request for advice from the Department of Justice (DOJ) in the wake of the *Collins* decision as to whether President Biden could fire Commissioner Saul, (ii) the DOJ's issuance of a memorandum opinion confirming that the President could do so, following which the President promptly removed Commissioner Saul from office, and (iii) the White House's statement, on removing Commissioner Saul, that, "'[s]ince taking office, Commissioner Saul has undermined and politicized Social Security disability benefits, . . . reduced due process protections for benefits appeals hearings, and taken other actions that run contrary to the mission of the agency and the President's policy agenda.'" Reply at 9-10 (footnote omitted).

He asserts that these communications highlight that President Biden (i) removed Commissioner Saul from office because Commissioner Saul had undermined and politicized the Social Security disability benefits process, (ii) believed that since Commissioner Saul took office in 2019, he "had infringed upon the constitutional due process rights of disability benefit applicants like" the plaintiff, and (iii) refrained from removing Commissioner Saul upon his inauguration only because of the unconstitutional removal restriction. *Id*. at 10.

First, *Collins* neither holds nor suggests that compensable harm can be presumed. Rather, as this court recently observed in denying a Social Security claimant's identical bid for relief, a claimant "must establish a 'link' between the adverse action and the unconstitutional tenure-protection provision" to warrant relief pursuant to *Collins*. *Kathy R. v. Kijakazi*, 2:21-cv-00095-JDL, 2022 WL 42916, at *3 (D. Me. Jan. 5, 2022) (rec. dec., *aff'd* Feb. 24, 2022) (citation omitted). *See also, e.g., Shaun A. v. Comm'r of Soc. Sec.*, Case No. C21-5003-SKV, 2021 WL 5446878, at *5 (W.D. Wash. Nov. 22, 2021), *appeal docketed*, No. 22-35056 (9th Cir. Jan. 20, 2022) ("[T]he

11

removal provision does not render the Commissioner's appointment invalid, and thus does not automatically void the SSA's actions under the Commissioner.").

Second, as this court held in *Kathy R.*, the evidence on which the plaintiff relies in the alternative falls short of establishing that link:

> The statement upon which Plaintiff relies was attributed to a "White House official" and not the President. In addition, the fact that President Biden removed the Commissioner soon after the DOJ's opinion regarding the applicability of the *Collins* decision to the statute does not necessarily mean President Biden would have removed Commissioner Saul within three weeks of President Biden's inauguration.[5] In this case, the action challenged by Plaintiff is the Appeals Council's denial of review of the ALJ's decision denying benefits, and Plaintiff has alleged no direct action by former Commissioner Saul himself, and no involvement – or even awareness – by the former or current President in the ALJ's or the Appeals Council's decision.

*Kathy R.*, 2022 WL 42916, at *4 (citation and internal punctuation omitted). *See also, e.g., Sarah H. v. Comm'r of Soc. Sec.*, CASE NO. 3:21-cv-05149-JRC, 2021 WL 5770269, at *5 (W.D. Wash. Dec. 6, 2021) (claimant failed to show compensable harm as required by *Collins* when she had "not identified any new regulations, agency policies or directives Commissioner Saul installed that may have affected her claims"); *Shaun A.*, 2021 WL 5446878, at *5 (claimant's "reference to an unnamed White House official's justification for Commissioner Saul's removal[,]" including that "Commissioner Saul was removed from office in part because he had undermined, politicized, and reduced due process protections for benefits appeals hearings," did not "indicate that [the claimant] was harmed") (citation and internal quotation marks omitted).

Remand, accordingly, is unwarranted on the basis of the plaintiff's constitutional argument.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

---

[5] The Appeals Council decision at issue in *Kathy R.* was dated February 8, 2021, *see Kathy R.*, 2022 WL 42916, at *4, nearly three weeks after President Biden's January 20, 2021, inauguration. As noted above, the Appeals Council decision at issue here, dated March 22, 2021, *see* Record at 7, also postdates President Biden's inauguration.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 6th day of March, 2022.

as

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge